IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEVON M. PAGE,

Plaintiff,

v.                                                    CASE NO. 20-3289-SAC

DAN SCHNURR, et al.,

Defendants.

MEMORANDUM AND ORDER
TO SHOW CAUSE

Plaintiff Devon M. Page, a state prisoner at the Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *in forma pauperis*.  For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.

**I.  Nature of the Matter before the Court**

Plaintiff's Complaint centers around an incident which occurred in September of 2020. Plaintiff states he was cleaning his cell when Corrections Officer Swann gave him a sack lunch. Plaintiff told Swann that he had given Plaintiff the wrong lunch.  Swann responded by saying it was not his problem.  Plaintiff then told Swann he should not come to work if he was going to be an a\*\*hole, and Swann said, "You guys are always trying to get over on someone.  F\*\*\*ing n\*\*\*\*rs."  Plaintiff lost his temper, grabbing a cup of disinfectant cleaning liquid and throwing it at Swann.  The cup hit Swann.  Swann then called a code, and Plaintiff was taken to an MRA

("More Restricted Area") cell without any clothing, mattress, bedding, or toilet paper.  After several hours, another officer brought Plaintiff his clothing.  The clothes were wet and smelled of urine.  Plaintiff then used a sheet to attempt to hang himself.  He was put on Crisis Level 2 for two weeks then returned to an MRA cell for some period of time.

The Complaint include three counts.   Count One alleges that Defendant Swann demonstrated racial discrimination against Plaintiff causing him mental anguish and pain and suffering.  In addition to the exchange recounted above, Plaintiff states Swann made statements such as "F**k the Black Lives Matter movement" and "They deserve to die" on a regular basis.

Count Two asserts that Plaintiff was denied protection from cruel and unusual punishment and his due process rights were violated by being held in an MRA "slam cell."  Plaintiff alleges the plumbing in the MRA cells is disconnected, preventing the toilet from being flushed from inside the cell.  He must rely on corrections officers to flush the toilet, which they do on an irregular basis.  This forces Plaintiff to eat, sleep, and live with the sight and smell of his own excrement.  Plaintiff further claims the MRA cells are too small, measuring only 40 square feet; and there is an extra brick enclosure and steel door, resulting in a lack of natural light and sound.  Plaintiff states he is required to spend all but five hours a week in the MRA cell.

In addition, Plaintiff alleges his MRA status has stopped him from receiving adequate mental health care.  He states he has been diagnosed as having a personality disorder, attention deficit hyperactivity disorder, bipolar depression, and anxiety.  He receives his medication but has been denied mental health books or participation in substance abuse group therapy and counseling.  Plaintiff asserts he is allowed medication and perhaps a monthly suicide check.

Count Three alleges Unit Team Sergeant Hertel denied Plaintiff access to the courts by interfering with his attempts to exhaust his administrative remedies.  Plaintiff claims Hertel refused

to address his staff misconduct claim involving Swann, rejected his grievances about the toilet and door in the MRA cell without consideration, failed to put a log number on his injury claim and failed to give the claim to the warden.

Plaintiff names as defendants Dan Schnurr, warden of HCF; Correctional Officer Swann; and Unit Team Sergeant Hertel.  He seeks an injunction ordering the firing of Defendant Swann and the retraining of Defendant Hertel, as well as compensatory and punitive damages for his psychological pain and suffering.  Also, he requests this suit be declared a class action.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate.  28 U.S.C. § 1915A(a).  Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency.  *See* 28 U.S.C. § 1915(e)(2).  Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th

Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The Complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the

line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in

a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to

plausible."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S.

Ct. at 1974).

## III.  Discussion

Plaintiff's Complaint is subject to dismissal for the following reasons.

### A.  Failure to State a Claim

#### *Count One – Racist Remarks*

Plaintiff alleges Defendant Swann demonstrated racial discrimination through the use of

racial slurs.  As explained above, a plaintiff bringing a claim under § 1983 must "allege the

violation of a right secured by the Constitution and laws of the United States."  *West,* 487 U.S. at

48.  While Plaintiff does not mention a constitutional right, the Equal Protection Clause of the

Fourteenth Amendment is typically invoked where discrimination is alleged.   "The Equal

Protection Clause 'keeps governmental decision makers from treating differently persons who are

in all relevant respects alike.'"  *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (*quoting*

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  "[T]o state a claim under § 1983 for violation of the

Equal Protection Clause, a plaintiff must show that he is a member of a class of individuals that is

being treated differently from similarly situated individuals who are not in that class."  *Hunnicutt*

*v. DeSantiago*, 429 F. Supp. 3d 905, 916 (D.N.M. 2019) (*citing see SECSYS, LLC v. Vigil*, 666

F.3d 678, 688 (10th Cir. 2012)).

Plaintiff, as an African-American, is a member of a protected class, and the mistreatment he asserts is being subjected to racist remarks. However, the Tenth Circuit has made clear that "verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (citations omitted). While Swann's racist comments to Plaintiff are "deplorable and unprofessional," they do not constitute an Equal Protection violation. *See Williams v. Levansailor*, 153 F.3d 730 (Table) (10th Cir. 1998) (collecting cases). Because Plaintiff includes no other allegation of racial discrimination beyond racist remarks from one correctional officer, he does not state a claim under the Equal Protection Clause. *See Hunnicutt*, 429 F. Supp. 3d at 918.

### Count Two – MRA "Slam" Cell

In Count Two, Plaintiff actually brings at least two claims that fall under the Eighth Amendment: a conditions of confinement claim and an inadequate mental health care claim.

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001); *Barney*

6

*v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).

In order to state a claim that conditions of confinement result of cruel and unusual punishment, the plaintiff has to establish "deliberate indifference."  The deliberate indifference standard includes both an objective and subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Martinez*, 430 F.3d at 1304.  The objective component is met only if the condition complained of is "sufficiently serious."  *Farmer*, 511 U.S. at 832.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id.*; *Barney*, 143 F.3d 1311.  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations. . . may meet the standard despite a shorter duration."  *Id.*

On the other hand, the court is mindful of the Supreme Court's mandate that the judicial branch accord deference to prison authorities in the running of prisons and jails, particularly when a state prison system is involved.  *See Turner v. Safley*, 482 U.S. 78, 85 (1987).  "[M]aintaining internal security and preserving internal order and discipline are essential goals that may require

limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

Plaintiff alleges the MRA cell lacks natural light and sound, is only 40 square feet, and has the toilet disconnected so he cannot flush it himself.  The conditions alleged are restrictive and harsh but may not rise to the level of a constitutional violation.  Plaintiff has failed to state how long he was exposed to such conditions, and such information is crucial to the determination of whether he has stated a claim for violation of his Eighth Amendment rights.

Plaintiff's second claim related to the MRA cell is that he did not receive adequate mental health care while confined there.  The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106; *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).   The "deliberate indifference" standard, as noted above, has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez*, 430 F.3d at 1304.  In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer*, 511 U.S. at 834.  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

Plaintiff's allegation that he has been diagnosed with personality disorder, attention deficit hyperactivity disorder, bipolar depression, and anxiety is sufficient at this stage "to establish the objective component of his deliberate indifference claim regarding his mental health needs."  *Gray v. Geo Grp., Inc.*, 727 F. App'x 940, 945 (10th Cir. 2018) (citing *see Mata*, 427 F.3d at 751).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

An inadvertent failure to provide adequate medical care "fail[s] to establish the requisite culpable state of mind."  *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.");  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding reasonable treatment does not constitute cruel and unusual punishment.  See *Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992)(Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.).  As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the
> conscience of mankind." Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medial
> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–106 (footnote omitted).  The prisoner's right is to medical care-not to the

type or scope of medical care he personally desires.  A difference of opinion between a physician

and a patient or even between two medical providers does not give rise to a constitutional right or

sustain a claim under § 1983.  *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).

Plaintiff states that he received his prescribed psychotropic medication and "perhaps a

monthly suicide check" while in the MRA cell but did not receive "other recommended and

requested treatments commensurate with his diagnos[e]s."  ECF No. 1, at 9.  Therefore, this is not

a case like *Gray* where the prisoner received no mental health care due to prison officials' errors.

Plaintiff's Complaint demonstrates that he did receive some treatment.  Thus, the Court finds that

Plaintiff's desire for additional or different treatment is best framed as a disagreement about his

course of treatment. *See Spencer v. Abbott*, 731 F. App'x 731, 747 (10th Cir. 2017) (finding that

providing some treatment "is easily distinguishable from circumstances involving a medical

professional's *complete* denial of obviously necessary medical care") (emphasis added).  Such a

disagreement may give rise to a claim for negligence or medical malpractice, but it is not sufficient

to state a constitutional violation. *Vasquez v. Davis*, 882 F.3d 1270, 1278 (10th Cir. 2018).

Plaintiff's allegations do not plausibly demonstrate, based on precedent, that Defendants have

consciously disregarded a substantial risk of serious harm to Plaintiff.  *Self v. Crum*, 439 F.3d

1227, 1231 (10th Cir. 2006).

### *Count Three - Access to the Courts*

Plaintiff alleges in Count Three that Defendants denied him ability to exhaust his administrative remedies, thereby denying him access to the courts.

The Tenth Circuit has rejected this argument.  In *Fogle v. Gonzales*, the plaintiff argued that the defendant's refusal to give him a grievance form meant he could not exhaust his administrative remedies as required by 42 U.S.C. § 1997e, and without exhausting his administrative remedies, he could not access the courts.  *Fogle v. Gonzales*, 570 F. App'x 795, 797 (10th Cir. 2014).  The Tenth Circuit found the plaintiff's theory to be "misguided."  *Id.*  "We have held that when a prison official prevents a prisoner from accessing the administrative grievance process, administrative remedies are 'unavailable' such that the prisoner may proceed directly to court without first exhausting the grievance process. *Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010). This means that after Gonzales denied the grievance form, Fogle was free to file suit. Thus, because Gonzales's denial of the grievance form in no way prevented or hindered Fogle from bringing suit in court, his access-to-the-courts claim indisputably lacks merit."  *Id.; see also McDiffett v. Nance*, No. 17-3037-SAC, 2018 WL 1366268, at *7 (D. Kan. Mar. 16, 2018); *Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts).  Plaintiff's claims in Count Three are subject to dismissal for failure to state an actionable claim.

### B.  Requested Relief

Plaintiff's request to have Swann fired is not the type of relief this Court has the authority to provide.  The remedies in federal court do not include the firing of state employees.  There may

be state administrative procedures for those actions, but they are not within the jurisdiction of this Court.

Plaintiff also asks to have this suit declared a class action.  It is generally recognized that a pro se plaintiff may not serve as a class representative "because the competence of a layman is clearly too limited to allow him to risk the rights of others."  *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks omitted).  *See also Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (pro se prisoners are not adequate representatives for a class).  Plaintiff may appear on his own behalf, 28 U.S.C. 1654, but may not represent another pro se plaintiff in federal court.  Additional party plaintiffs may litigate their own claims and to either pay the filing fee or seek leave to proceed in forma pauperis.

Finally, Plaintiff's request for compensatory damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e).  Section 1997e(e) . . . provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

Plaintiff has not described any physical injury that was caused by the alleged deprivations of his constitutional rights.   His allegations of "psychological pain and suffering" and discrimination do not suggest physical injury.  The only relief requested in the complaint is money damages.  The Court finds that Plaintiff's claim for actual or compensatory damages is subject to being dismissed unless he alleges facts showing a prior physical injury.

**IV.  Response Required**

For the reasons stated herein, Plaintiff's Complaint is subject to dismissal under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why his Complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the Complaint being dismissed for the reasons stated herein without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **September 17, 2021**, in which to show good cause, in writing, why his Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

DATED:  This 17th day of August, 2021, at Topeka, Kansas.


**s/  Sam A. Crow**
**SAM A. CROW**
**U.S. Senior District Judge**